UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CR-252-M

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| MELVIN BOWERS, JR. | ) | |

The United States Attorney charges the following:

## INTRODUCTORY ALLEGATIONS

### The Small Business Administration

1. At all relevant times, the United States Small Business Administration (SBA) was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The SBA's mission was to maintain and strengthen the nation's economy by enabling the establishment and viability of small business and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA facilitated government backed loans through banks, credit unions, and other lenders.

### The Paycheck Protection Program ("PPP")

2. In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), which was designed to provide emergency financial assistance to millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic.

3.      Among other sources of relief, the CARES Act authorized up to $349 billion in forgivable loans to small business for job retention and other specified expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion in additional PPP funding.

4.      To obtain a PPP loan, businesses were required to submit a PPP loan application, signed by an authorized representative of the business, acknowledging the program rules. The business was required to state its average monthly payroll expenses and the number of employees. These figures were used to calculate the amount of PPP funding the business was eligible to receive. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

5.      A PPP loan application was required to be processed by a participating financial institution (a "Lender"). Many Lenders were financial institutions as defined in 18 U.S.C. § 20. If a PPP loan application was approved, the Lender funded the PPP loan using its own moneys, which the SBA fully guaranteed. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the Lender to the SBA in the course of processing the loan.

6.      Businesses were required to use PPP loan proceeds on specified expenses, including payroll costs, mortgage interest, rent, and utility costs. PPP loans were 100-percent forgivable if the borrower submitted documentation to the Lender

and the SBA demonstrating that at least 60 percent of the PPP loan proceeds were used to meet existing payroll obligations and retain employees.

## The Scheme

7. On or about June 22, 2021, BOWERS submitted a loan application to Leader Bank for "Melvin Bowers," a sole proprietorship in Greensboro, North Carolina, seeking approximately $20,833 in PPP funds. BOWERS described his business using North American Industry Classification System (NAICS) code 236210, denoting the field of "Industrial Business Construction." He stated within application materials that he was a contractor for hire, who was unable to find employment due to COVID. He claimed $108,552 in gross business income for the 2019 tax year and submitted a 2019 IRS Schedule C purporting to show that amount.

8. BOWERS signed and falsely certified that the PPP loan application, all information provided therein, as well as all supporting documents and forms, were true and accurate. Among other things, BOWERS falsely certified that the PPP funds would be used for "business related purposes" and for paying permissible expenses. BOWERS further falsely certified that he had operated a contracting business in 2019 that generated $108,552 in gross income and that the associated 2019 IRS Schedule C was a true and accurate form.

9. After obtaining an initial guarantee of funds for BOWERS' PPP application from the SBA, Leader Bank sold the loan to Customers Bank.

10. On or about June 30, 2021, Customers Bank disbursed PPP loan proceeds into BOWERS' checking account with South Florida Educational Federal

Credit Union ending in -5963. Prior to the $20,833 loan disbursement, the -5963 checking account had an account balance of $1,087.

11. Between July 4 and July 7, 2021, BOWERS used the PPP loan proceeds for personal expenses, both by paying for personal purchases directly out of his checking account and by transferring funds out of the checking account and into a personal account belonging to his wife. For example, BOWERS made two payments to a plastic surgeon totaling $15,000. After the second payment on July 7, the checking account retained only $721.72. None of the personal expenses for which BOWERS used the PPP loan proceeds were permissible expenses under the rules governing PPP loans.

12. On or about August 15, 2022, BOWERS submitted an application seeking forgiveness of the entire PPP loan. The application warned BOWERS that making false statements on the application for forgiveness would constitute a federal crime. Nevertheless, on the forgiveness application, BOWERS falsely represented that his sole proprietorship had spent the entirety of the loan principal on "payroll costs." BOWERS also falsely represented that his sole proprietorship had "complied with all requirements in the Paycheck Protection Program Rules." BOWERS signed the forgiveness application despite these false representations.

13. Based upon the false forgiveness application, BOWERS' PPP loan was forgiven. On or about August 22, 2022, the SBA paid Customers Bank a sum totaling all principal and interest that BOWERS then owed on the loan.

## COUNT ONE

14. The United States Attorney realleges and incorporates by reference all allegations contained in paragraphs 1 through 13 of this Criminal Information.

15. From in or about June 2021 to in or about September 2021, in the Eastern District of North Carolina and elsewhere, the Defendant MELVIN BOWERS, JR., did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, and sounds in violation of Title 18, United States Code, Section 1343.

## COUNT TWO

16. From in or about July 2021 to in or about July 2022, in the Eastern District of North Carolina and elsewhere, the defendant MELVIN BOWERS, JR., a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for being induced to do an act and omit to do an act in violation of his official duty; that is, knowingly accepting payments of money from an inmate at Federal Correctional Complex, Butner, North Carolina, in exchange for using purported influence to secure that inmate's early release from custody, all in violation of Title 18, United States Code, Section 201(b)(2)(A) & (C).

## **FORFEITURE NOTICE**

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7), the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

Upon conviction of any violation of, or conspiracy to violate, Section(s) 215, 656, 657, 1006, 1007, 1014, 1341, 1343, or 1344 of Title 18 of the United States Code affecting a financial institution, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of the said violation.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment:

a) A sum of money representing the gross proceeds of the offense(s) charged herein against MELVIN BOWERS, JR., in the amount of at least $26,233.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been

6
Case 5:25-cr-00252-M    Document 6    Filed 09/22/25    Page 6 of 7

commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

W. ELLIS BOYLE
United States Attorney

By: *[signature]*

JAKE D. PUGH
Assistant United States Attorney